35 F.3d 573
 74 A.F.T.R.2d 94-6199
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony F. O'BRIEN, Defendant-Appellant.
 No. 93-10605.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 11, 1994.*
Decided Aug. 31, 1994.
 
 1
 Before: LEAVY, KLEINFELD, Circuit Judges, and MARSH,** District Judge.
 
 
 2
 MEMORANDUM***
 
 
 3
 Anthony F. O'Brien appeals the sentence imposed on him under the Sentencing Guidelines for his failure to file federal income tax returns in violation of 26 U.S.C. Sec. 7203. For the reasons discussed below, we affirm.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 4
 On March 25, 1993, O'Brien was indicted on three counts of failure to file federal income tax returns in violation of 26 U.S.C. Sec. 7203. The tax returns in question were O'Brien's (and his wife's) joint returns for 1986, 1987, and 1988. Two months after the indictment, O'Brien filed tax returns for all three years and paid the amounts due the IRS on all three returns.
 
 
 5
 O'Brien then entered into a plea agreement, pursuant to which he pleaded guilty to one count of failure to file. The government dismissed the remaining counts.
 
 
 6
 Under the Sentencing Guidelines, the sentence for failure to file a federal income tax return is based on the related "tax loss." At sentencing, O'Brien contended that the United States suffered no tax loss because he eventually paid his tax liabilities. O'Brien also argued that his tax loss was incorrectly computed.
 
 
 7
 The district court rejected both of O'Brien's contentions. It computed tax loss on the basis of O'Brien's gross income as determined by the probation officer.[1] The court then awarded O'Brien a two-point reduction for acceptance of responsibility. Accordingly, it sentenced him to three months' imprisonment, to be followed by one year of supervised release. The court also imposed a fine of $10,000 and a special assessment of $25.
 
 
 8
 O'Brien timely appeals, arguing (1) that the United States suffered no tax loss, and alternatively (2) that tax loss should be based on adjusted gross income rather than gross income.[2]
 
 STANDARD OF REVIEW
 
 9
 The district court's interpretation of the Sentencing Guidelines is reviewed de novo. United States v. Blaize, 959 F.2d 850, 851 (9th Cir.), cert. denied, 112 S.Ct. 2954 (1992).
 
 DISCUSSION
 A. Existence of Tax Loss
 
 10
 U.S.S.G. Sec. 2T1.2 applies in sentencing a defendant convicted for willful failure to file a federal income tax return. This section provides that a defendant's base offense level is computed as "1 level less than the level from Sec. 2T4.1 (Tax Table) corresponding to the tax loss; or ... [level] 5, if there is no tax loss." U.S.S.G. Sec. 2T1.2 (Nov. 1992)
 
 
 11
 "Tax loss" is defined as "the total amount of tax that the taxpayer owed and did not pay." Id. However, for cases involving willful failure to file a tax return, the guideline sets a minimum tax loss of "not less than 10 percent of the amount by which the taxpayer's gross income for that year exceeded $20,000." Id.
 
 
 12
 The district court computed tax loss based on this minimum tax loss formula. O'Brien contends that this was error because the government suffered no tax loss because he paid his tax liabilities before sentencing. O'Brien observes that the minimum sentence under section 2T1.2 applies "if there is no tax loss." He contends that the use of present tense suggests that tax loss is to be measured at the time of sentence and thus should reflect presentence payments.
 
 
 13
 Appellant's argument ignores the plain language of the guideline which sets a floor on any tax loss determination in a failure-to-file case at ten percent of gross income in excess of $20,000. See U.S.F.G. Sec. 2T1.2. The floor is thus based on a figure which focuses upon the offense conduct without offset for post-discovery pre-sentencing payments.
 
 
 14
 The statutory floor provision in Sec. 2T1.2 is also consistent with the overall structure of the tax offense guidelines.[3] In tax evasion cases, a defendant does not receive credit for late payments. See United States v. Moore, 997 F.2d 55, 59-61 (5th Cir.1993); United States v. Mathis, 980 F.2d 496, 497 (8th Cir.1992); United States v. Pollen, 978 F.2d 78, 90-91 (3d Cir.1992), cert. denied, 113 S.Ct. 2332 (1993).
 
 
 15
 Further, the plain language of section 2T1.2's tax loss floor accords with the overall intent of the guidelines. "Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying [the] guidelines" for tax offenses. U.S.S.G. Ch. 2, Pt. T, intro. comment. The guidelines would carry little deterrent value if taxpayers could unilaterally reduce their sentences to the minimum level by paying tax liabilities after they are caught. See e.g. United States v. Napier, 21 F.3d 354, 355 (9th Cir.1994) (per curiam) (in assessing robbery "loss" court consider potential loss without regard to amounts recovered). We reject appellant's contention that this interpretation would effectively negate the portion of the guideline establishing a base offense level of five where there is no tax loss because it is unlikely that the government would prosecute low-income taxpayers. Section 2T1.2 applies to willful failures to supply information as well as willful failures to file. See U.S.S.G. Sec. 2T1.2. The floor on tax loss applies only to the latter, not to the former, see id; thus, the provisions for "zero tax loss" are still meaningful for failure to supply information. This scheme makes sense since a person convicted of withholding information may still have timely filed a return and paid the related tax liability.
 
 
 16
 Finally, O'Brien argues that his interpretation is necessary to reward taxpayers who come clean by paying taxes before sentencing. We find that the two or three point reduction for acceptance of responsibility is sufficient to that task.
 
 B. Computation of Tax Loss
 
 17
 O'Brien contends, in the alternative, that the district court should have computed tax loss on the basis of his adjusted gross income rather than on his gross income. He does not argue, on appeal, that the figure used for gross income was an incorrect determination of his unadjusted gross income, so we have no occasion to determine whether the correct figure was used for unadjusted gross income.
 
 
 18
 Section 2T1.2 plainly states that the floor on tax loss is based on gross income, not adjusted gross income. See U.S.S.G. Sec. 2T1.2. "Gross income" is a term of art which is defined in the tax code as "all income from whatever source derived." 26 U.S.C. Sec. 61. In the 1993 amendments to 2T1.1, the commission clarified that "gross income" for the purpose of the section "has the same meaning as it has in 26 U.S.C. Sec. 61."
 
 
 19
 The guidelines employ simplified calculations of tax loss in order to avoid complex disputes over late-blooming adjustments and deductions the taxpayer asserts he could have taken. See U.S.S.G. Sec. 2T1.1, comment. (n. 4) (explaining similar tax loss formula for tax evasion cases): "This alternative standard may be easier to determine, and should make irrelevant the issue of whether the taxpayer was entitled to offsetting adjustments that he failed to claim."
 
 
 20
 This approach to assessing minimum tax loss is also consistent with other guideline provisions which specify that loss "need not be determined with precision," but may instead be based upon "reasonable estimates given available information." See e.g. Application Note 8 to Sec. 2F1.1 (fraud losses). Further, at least one other court rejected a similar attempt to restrict the scope of relevant conduct in tax loss cases by reference to other potential tax code liability limits. See e.g., United States v. Pierce, 17 F.3d 146, 150 (6th Cir.1994) (civil tax statute of limitations does not restrict scope of relevant conduct under guidelines for tax evasion).
 
 
 21
 O'Brien also contends that the government used adjusted gross income in the indictment, and that the district court should therefore be bound by that approach. However, the amount of tax loss is not an element of the offense of conviction. See United States v. Vroman, 975 F.2d 669, 670 (9th Cir.1992) (conviction for failure to file an income tax return requires proof of three elements: taxpayer was required to file a return, failed to file a return and the failure was willful), cert. denied, 113 S.Ct. 1611 (1993). Accordingly, the district court is not bound by tax loss alleged in the indictment, but instead determines the amount of loss at sentencing. See United States v. Sotelo-Rivera, 931 F.2d 1317, 1319 (9th Cir.1991) (drug quantity is not an element of the substantive offense but instead is a matter for the court at sentencing), cert. denied, 112 S.Ct. 1186 (1992).[4]
 
 
 22
 Finally, O'Brien contends that he entered his plea with the understanding that he would be sentenced on the basis of the adjusted gross income used in the indictment. He argues that the government implicitly stipulated to this amount and therefore claims that the district court should be bound by that stipulation, or, if the court was not bound, his plea was not knowing and voluntary.
 
 
 23
 Even if such a stipulation existed, a district court is not bound by the parties' stipulations of fact, "but may with the aid of the presentence report, determine the facts relevant to sentencing." U.S.S.G. Sec. 6B1.4(d); see e.g. United States v. Mason, 961 F.2d 1460, 1462 (9th Cir.1992) (district court not bound by parties' stipulation as to amount of cocaine distributed). At the plea hearing, the district court informed O'Brien of the Sentencing Guidelines and explained that it would not make any prediction about his ultimate sentence. O'Brien expressly denied that he was "pleading guilty because somebody promised [him] in fact what the sentence will be" and acknowledged that he was fully aware that he could be sentenced to the maximum extent provided by law of up to one year incarceration. Accordingly, there is no evidence to support appellant's claim that his plea was anything but knowing and voluntary.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 Honorable Malcolm F. Marsh, United States District Judge for the District of Oregon, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 
 
 [1]
 The district court computed tax loss on the basis of O'Brien's gross income for 1986-88. Although O'Brien pleaded guilty only with respect to 1988, a district court may include tax losses for years outside the offense of conviction if they are part of the same course of conduct. See United States v. Kieneberger, 13 F.3d 1354, 1356-57 (9th Cir.1994). On appeal, O'Brien does not challenge this facet of the district's decision
 
 
 [2]
 We note that O'Brien was sentenced on September 14, 1993. "Normally, a district court is to apply the version of the Sentencing Guidelines in effect on the date of sentencing." United States v. Warren, 980 F.2d 1300, 1304 (9th Cir.1992), cert. denied, 114 S.Ct. 397 (1993). Subject to certain exceptions not applicable here, "[s]ubstantive amendments to the Guidelines that occur between the date of sentencing and the resolution of an appeal have no retroactive effect." United States v. Aldana-Ortiz, 6 F.3d 601, 602 (9th Cir.1993). Thus, the applicable guidelines here are those that became effective November 1, 1992
 
 
 [3]
 The guidelines set the offense level for failure to file at one level below that for tax evasion of a corresponding amount. See U.S.S.G. Sec. 2T1.2, comment. (backg'd). The commentary explains that this parallel exists "[b]ecause the conduct [of a taxpayer in failing to file] generally is tantamount to tax evasion." Id
 
 
 [4]
 The government had to allege that O'Brien had some gross income in order to indict him for failing to file a tax return. See Vroman, 975 F.2d at 671 & n. 1. Similarly, the prosecution must also allege that a drug defendant possessed some quantity of drugs in order to indict that defendant for drug possession. In either case, however, once some amount is ascertained, the precise quantity is a matter for the district court to determine at sentencing. See Sotelo-Rivera, 931 F.2d at 1319