149 T.C. No. 15

UNITED STATES TAX COURT

ZIPORA KLEIN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

SAMUEL KLEIN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 24595-15L, 24596-15L.　　　　Filed October 3, 2017.

Ps, a married couple, pleaded guilty to violating I.R.C. sec. 7206(1) by filing a false return for 2006. Ps agreed to make full restitution for the losses caused by their underreporting of income for 2003-2006. At the sentencing the Government presented a Federal tax-loss calculation of $562,179 for those years. Adopting it, the District Court ordered Ps to pay that sum as restitution to the IRS. Ps eventually paid the full amount of restitution, along with all applicable title 18 statutory additions, and the Government released the title 18 lien that had accompanied the restitution order.

Relying on I.R.C. sec. 6201(a)(4), R later assessed against Ps not only the $562,179 of restitution they had been ordered to pay, but also underpayment interest under I.R.C. sec. 6601(a) and additions to tax under I.R.C. sec. 6651(a)(3). When Ps did not pay the latter amounts, R began collection action, filing notices of Federal tax lien.

Following a CDP hearing, Ps timely petitioned this Court. R contends that he can assess and collect interest and additions to tax on the restitution amount under I.R.C. sec. 6201(a)(4), which authorizes him to assess and collect restitution "as if such amount were such tax."

Held: I.R.C. sec. 6201(a)(4) does not authorize R to add underpayment interest or failure-to-pay additions to tax to a title 18 restitution award, and R may not assess or collect from Ps underpayment interest or additions to tax without first determining their civil tax liabilities.

Mark M. Hathaway, for petitioners.

Carolyn A. Schenck, Michael K. Park, and Halvor R. Melom, for

respondent.

OPINION

LAUBER, Judge: In these consolidated collection due process (CDP) cases,

petitioners seek review pursuant to sections 6320(c) and 6330(d)(1)[1] of the

determination by the Internal Revenue Service (IRS or respondent) to uphold

notices of Federal tax lien (NFTL) filing. The cases present a question of first

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

impression in this Court: whether the IRS may assess and collect interest and additions to tax on amounts assessed under section 6201(a)(4)(A). That provision authorizes the Secretary, following a taxpayer's criminal conviction for failure to pay any tax imposed by title 26, to "assess and collect the amount of restitution" ordered by the sentencing court "in the same manner as if such amount were such tax."

Petitioners have fully paid the restitution ordered by the sentencing court. The only amounts remaining in dispute are the interest and additions to tax subsequently assessed by the IRS, which were the principal focus of the CDP hearing. Respondent has moved for summary judgment, urging that we sustain the NFTL filing to facilitate collection of the assessed interest and additions to tax.

Although petitioners have not filed cross-motions for summary judgment, they contend that they have fully discharged their restitution obligations and that "the collection action set forth in the notice of determination [should] not be allowed to proceed." Under these circumstances we will recharacterize as a cross-motion for summary judgment each petitioner's opposition to respondent's motion for summary judgment.[2] Concluding as we do that the statute does not authorize

_____

[2]Because the controlling question has been fully briefed by the parties and is purely one of law, doing so will not prejudice respondent. See Abramo v.

(continued...)

the IRS to collect interest or additions to tax on amounts assessed under section 6201(a)(4), we will deny respondent's motions for summary judgment and grant that relief instead to petitioners.

## Background

The following facts are derived from the parties' pleadings and motion papers, including the exhibits attached thereto.  See Rule 121(b).  Pursuant to Rule 201 of the Federal Rules of Evidence, we take judicial notice of certain filings in petitioners' criminal case.  See United States v. Klein, No. 2:10-CR-00015-RGK (C.D. Cal.) (filed Jan. 7, 2010).  Petitioners, who are husband and wife, resided in California when they petitioned this Court.[3]

Following a prosecution in the U.S. District Court for the Central District of California, petitioners pleaded guilty to one count of violating section 7206(1) by willfully making and subscribing to a false Federal income tax return for 2006. Samuel Klein also pleaded guilty to two nontax counts.  On August 31, 2011, the

_____

[2](...continued)
Commissioner, 78 T.C. 154, 162 & n.9 (1982).

[3]Absent stipulation to the contrary, an appeal in these cases would appear to lie in the U.S. Court of Appeals for the Ninth Circuit.  See sec. 7482(b)(1)(A). Accordingly, where relevant to the discussion, we note that court's precedent.  See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).

District Court sentenced Zipora Klein to 27 months in prison, followed by a year of supervised release, and Samuel Klein to 63 months in prison, followed by three years of supervised release. As a separate component of each sentence, the District Court ordered petitioners to pay restitution to the IRS.

Although petitioners were convicted for tax crimes committed in 2006, Samuel Klein admitted in his plea agreement that he had underreported income on joint returns with his wife "during the period 2003 through 2006." At sentencing, the Government presented a "Calculation of the Federal Tax Due and Owing for Criminal Purposes" for petitioners' 2003-2006 tax years. Under the U.S. Sentencing Guidelines, this is generally referred to as the "tax loss calculation." See U.S. Sentencing Guidelines Manual (U.S.S.G.) sec. 2T1.1(c)(1) (U.S. Sentencing Comm'n 2006) (defining tax loss in the case of a fraudulent or false return as "the total amount of loss that was the object of the offense").

Relying on the bank deposits method, the Government reconstructed petitioners' income for 2003-2006 and calculated an aggregate Federal tax loss of $562,179. Objecting to that calculation, petitioners' counsel argued that the "[G]overnment formula does not allow deductions for all business expenses, only [for] business expenses reported on filed income tax returns." According to Samuel Klein's counsel, allowing all permissible deductions would have yielded

tax losses for only two years:  a tax loss of $17,701 for 2003 and a tax loss of $4,467 for 2006.

The sentencing court disregarded those objections and accepted the Government's tax-loss calculation for determining petitioners' custodial sentences under the Sentencing Guidelines.  Those Guidelines acknowledge that "the amount of the tax loss may be uncertain" and contemplate that the court "will simply make a reasonable estimate based on the available facts."  Id. sec. 2T1.1, app. n.1.  The District Court based Samuel Klein's sentence on the $562,179 tax loss calculated by the Government and based Zipora Klein's sentence on a smaller tax loss for 2006 alone.  Separately, the court ordered petitioners to pay, with joint and several liability, $562,179 as restitution to the IRS.

During the sentencing hearing the District Court indicated that it would consider modifying the restitution order if petitioners' 2003-2006 Federal tax liabilities were determined to be less than $562,179.  With that proviso, the court ordered petitioners to pay this sum within 12 months of sentencing, i.e., by August 31, 2012.  The Court ordered that petitioners' "liability for restitution ceases" if and when the IRS received full restitution.

Pursuant to their plea agreements petitioners executed with the IRS a Form 906-C, Closing Agreement, acknowledging that their overall Federal income tax

liabilities for 2003-2006 remained indeterminate.[4]  Petitioners agreed that the IRS was free to conduct audits for those years at any time, "waiv[ing] all defenses against and restrictions on assessment and collection" and waiving "any defense based on the expiration of the period of limitations."  Six years later, the IRS does not appear to have completed, or even commenced, a civil examination for petitioners' 2003-2006 tax years.

In June 2012 petitioners filed amended individual returns for 2003-2006 showing aggregate additional tax due of $106,578.  On August 31, 2012, the date their restitution payment was due, they moved the District Court to vacate their sentences under 28 U.S.C. sec. 2255, urging that the tax-loss calculation underlying their sentences was erroneous.  In support of that contention, they pointed to IRS spreadsheets, of which they had recently become aware, indicating that they could be entitled to substantial additional deductions against their 2003-2006

_____

[4]In the closing agreement petitioners conceded liability for fraudulent failure-to-file additions to tax under section 6651(f) for 2003, 2005, and 2006 and a section 6663 fraud penalty for 2004.  The bases for determining the additions to tax and the penalty are different:  tax required to be shown on the return (less prepayments and credits) for the additions to tax; and underpayment for the penalty.  See Mohamed v. Commissioner, T.C. Memo. 2013-255.  Computing either would require ascertaining petitioners' tax due for each year.  In the absence of an IRS civil examination determining the bases for calculating the additions to tax and the penalty, respectively, petitioners' overall Federal income tax liabilities for 2003-2006 remained uncertain.

income, which the Government had failed to take into account when calculating the $562,179 tax loss. If all proper deductions were allowed, petitioners contended, the tax loss for 2003-2006 would be only $106,578, i.e., the aggregate additional tax liabilities shown on their recently filed amended returns. In October 2012 petitioners delivered to the IRS four checks totaling $106,578.

In December 2012 petitioners filed a notice with the District Court reporting that, by making this $106,578 payment, they had fully discharged their proper restitution obligation to the IRS. In March 2013 the District Court denied on procedural grounds their motion to vacate sentence, explaining that they had neglected to pursue a direct appeal challenging the tax-loss calculation on which their sentences had been based. The court referred to the spreadsheets showing allowable deductions for 2003-2006 as "being used to resolve the ongoing civil dispute, not the criminal matter which has already been determined." The court noted that, "more than a year after sentencing, the civil dispute has not settled, indicating the depth of factual inquiry necessary to resolve the issues of deductions and income."

After Zipora Klein was released from custody, the Government asked the District Court to revoke her supervised release for failure to comply with the restitution order. To prevent that outcome she delivered to the Los Angeles U.S. Attorney's Office in August 2014 payment for the $455,601 balance of the restitu-

tion (i.e., $562,179 minus the $106,578 paid in October 2012), plus post-judgment interest imposed on restitution awards by title 18. See 18 U.S.C. sec. 3612(f)(2) (2012). The U.S. Attorney's Office thereupon released a previously filed notice of a "lien in favor of the United States upon all property and rights to property belonging to" Zipora Klein. The certificate releasing that lien recited that her payment obligations with respect to the restitution ordered at sentencing, "together with all statutory additions," had been satisfied. On August 25, 2014, the District Court dismissed the proceeding seeking revocation of her supervised release.

Two months later, on October 22, 2014, the IRS filed an NFTL against each petitioner, seeking to collect interest and failure-to-pay additions to tax on the restitution amount. Eighteen months previously the IRS had assessed not only the restitution amount of $562,179 under section 6201(a)(4), but also underpayment interest under section 6601(a). For this purpose, the IRS treated as the "underpayment" for each year the tax-loss figure accepted by the District Court at petitioners' sentencing. And the IRS used as the commencement date for calculating interest, not the date on which the restitution was ordered or required to be paid, but the original due dates of petitioners' 2003-2006 tax returns. Adopting the same

approach, the IRS also assessed for each year a failure-to-pay addition to tax under section 6651(a)(3).[5]

Concurrently with filing the NFTLs the IRS sent petitioners Letters 3172 informing them of the liens and of their rights to a CDP hearing. Each petitioner timely requested a CDP hearing, seeking withdrawal of the NFTL and urging as the basis therefor: "Restitution paid before lien was issued and filed."

A settlement officer (SO) from the IRS Appeals Office conducted a telephone CDP hearing with petitioners and their counsel on July 28, 2015. According to the SO's case activity record, the only issue petitioners raised during the hearing was that they had paid the "balance in full." The SO acknowledged that the restitution portion of the assessment "appear[s] to have been paid" but noted that the assessed interest and additions to tax (he called them "penalties") had not been paid. Petitioners during the hearing did not request a collection alternative, but the SO allowed them two weeks to seek one.

Not having heard from petitioners by August 14, 2015, the SO closed the case. On August 25, 2015, the IRS issued petitioners notices of determination sus-

_____

[5]After assessing underpayment interest, the IRS appears to have issued to each petitioner a notice and demand for the unpaid balance. Pursuant to section 6651(a)(3), additions to tax, computed on the unpaid balance shown in the notice and demand, would have begun accruing 11 business days thereafter. By the time it filed the NFTLs, the IRS had imposed and assessed those additions.

taining the NFTL filings and showing a "total balance due" of $359,933 as of August 14, 2015. The notices explained that this balance consisted entirely of assessed interest and additions to tax calculated on the amount of restitution.

Both petitioners timely petitioned this Court. Respondent moved for summary judgment in each docket on September 15, 2016. Attached to the motions were assessment certificates for petitioners showing that by June 27, 2016, the aggregate balance due had declined to $245,150.[6] We consolidated the cases on our own motion and ordered supplemental briefing addressing the IRS' authority to collect statutory interest and failure-to-pay additions to tax on amounts of restitution assessed under section 6201(a)(4)(A).

Discussion

I.      Summary Judgment Standard and Standard of Review

The purpose of summary judgment is to expedite litigation and avoid unnecessary and time-consuming trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of

---

[6]This reduction was apparently attributable to the IRS' recognizing its delay in processing the $455,601 payment Zipora Klein had submitted to the U.S. Attorney's Office in October 2012, and recomputing interest and additions to tax it had initially imposed and assessed.

law.  Rule 121(b); <u>Elec. Arts, Inc. v. Commissioner</u>, 118 T.C. 226, 238 (2002); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), <u>aff'd</u>, 17 F.3d 965 (7th Cir. 1994).

The parties agree on all material facts affecting the application of section 6201(a)(4) to these cases.  The proper interpretation of that provision poses a pure question of law.  We conclude that the issues presented by respondent's motions and petitioners' deemed cross-motions are appropriate for summary adjudication.

Although neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case, our case law tells us what standard to adopt.  Where the validity of a taxpayer's "underlying tax liability" is properly at issue, we review the IRS' determination de novo. <u>Goza v. Commissioner</u>, 114 T.C. 176, 181-182 (2000).  Where the taxpayer's underlying liability is not before us, we review the IRS' decision for abuse of discretion only. <u>Id.</u> at 182.  Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), <u>aff'd</u>, 469 F.3d 27 (1st Cir. 2006); <u>see also</u> <u>Keller v. Commissioner</u>, 568 F.3d 710, 716 (9th Cir. 2009), <u>aff'g in part</u> T.C. Memo. 2006-166.

The term "underlying tax liability" is not "defined in section 6320 or 6330, nor is there any specific reference to that term in the legislative history." Montgomery v. Commissioner, 122 T.C. 1, 7 (2004). That being so, we have deemed it "reasonable to interpret the term 'underlying tax liability' as a reference to the amounts that the Commissioner assessed for a particular tax period." Ibid. In other words, in any CDP proceeding, "underlying tax liability" refers to the assessed liabilities that the IRS is seeking to collect via the challenged lien or levy.

If we apply that definition here, petitioners' "underlying tax liability" consists of the criminal restitution, interest, and additions to tax that the IRS assessed for 2003-2006. Because petitioners have fully paid the $562,179 restitution, the underlying liability remaining in dispute consists of the statutory interest and additions to tax that the IRS calculated with reference to the restitution amount. As of June 27, 2016, that unpaid balance totaled $245,150.

Under section 6330(c)(2)(B), a taxpayer may challenge his underlying tax liability at a CDP hearing only "if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute [it]." Respondent concedes that petitioners did not receive a notice of deficiency for 2003-2006. Section 6213(b)(5) expressly excepts from deficiency procedures an "assessment [that] has been or will be made pursuant to section

6201(a)(4)." Because the IRS has not yet completed a civil examination of petitioners' 2003-2006 returns, it could not possibly have issued them a notice of deficiency for those years. And petitioners have had no other opportunity to dispute their liability for the assessed interest and additions to tax.

In order to dispute his underlying tax liability in this Court, the taxpayer must have properly raised that issue at the CDP hearing. See secs. 301.6320-1(f)(2), Q&A-F3, 301.6330-1(f)(2), Q&A-F3, Proced. & Admin. Regs.; see also Giamelli v. Commissioner, 129 T.C. 107, 115 (2007). Petitioners distinctly contested at the CDP hearing their liability for the interest and additions to tax, and we find that they sufficiently preserved this issue in their petitions to this Court.[7] We accordingly review de novo the SO's determination that the Code authorized the IRS to assess these amounts.

---

[7]Both when requesting the CDP hearing and during that hearing, petitioners insisted that there was no balance remaining on their restitution obligation. In their petitions, they reiterated that they had "paid all deficiencies for 2003, 2004, 2005, and 2006, and there is nothing due." It is apparent that petitioners used the word "deficiencies," not as the technical term defined in section 6211 but to mean unpaid tax liabilities. By alleging that they had no unpaid tax liabilities for 2003-2006, they necessarily challenged the interest and additions to tax that the IRS had tacked on to the restitution-based assessment.

II.     Disputed Interest and Additions to Tax

Section 6601(a) provides that interest shall be paid "[i]f any amount of tax imposed by this title * * * is not paid on or before the last date prescribed for payment." Section 6651(a)(3) imposes an "addition to tax" in case of failure to pay timely "any amount in respect of any tax required to be shown on a return * * * which is not so shown." The question is whether these provisions authorize the Secretary to assess and collect interest and additions to tax on amounts of restitution ordered by a sentencing court and assessed under section 6201(a)(4).

A.     The Statutory Text

The parties agree that the restitution ordered by the sentencing court is an "amount of restitution under an order pursuant to section 3556 of title 18," within the meaning of section 6201(a)(4). But that provision does not label the restitution amount "tax." Rather, it enables the Secretary to "assess and collect the amount of restitution * * * for failure to pay any tax * * * in the same manner as if such amount were such tax." One way of phrasing the question presented is whether Congress meant what it said when it used the subjunctive mood in drafting this provision. We think that it did.

Congress enacted section 6201(a)(4) in 2010, effective for restitution ordered after August 16 of that year. Firearms Excise Tax Improvement Act of 2010

(FETIA), Pub. L. No. 111-237, sec. 3, 124 Stat. at 2497. For many years previously, various provisions of title 18 had authorized District Courts to order restitution to the IRS when imposing sentences for tax-related crimes. As with other restitution awards, responsibility for such restitution lay principally with the Department of Justice, specifically, the Financial Litigation Unit (FLU) at the U.S. Attorney's Office that prosecuted the defendant. The FLU reported restitution payments to the sentencing court and eventually transmitted the funds to the IRS.

FETIA did not purport to change any of that. But before its enactment in 2010 the IRS lacked a proper accounting mechanism to credit receipts of restitution payments. The IRS typically waits until after criminal proceedings have concluded before commencing an examination to determine the taxpayer's civil liabilities. And section 6213(a) generally restricts the IRS from making any assessment until it has sent the taxpayer a notice of deficiency following such an examination.

By adding section 6201(a)(4) to the Code in FETIA, Congress sought to fill this gap by granting the IRS early assessment authority for restitution awards. The IRS can now assess the amount of restitution ordered by a District Court as soon as that order becomes final. See sec. 6201(a)(4)(B). Thus, when the defendant pays the restitution and the FLU transmits those funds to the IRS, the taxpayer's

account will show an assessment (i.e., an account receivable) against which the payment can be credited.

Congress implemented this new accounting mechanism by authorizing the Secretary to "assess and collect the amount of restitution * * * for failure to pay any tax * * * in the same manner as if such amount were such tax." Sec. 6201(a)(4)(A). We begin our inquiry, as we must, by considering the plain and ordinary meaning of the text Congress enacted. See, e.g., Jimenez v. Quarterman, 555 U.S. 113, 118 (2009); Rainero v. Archon Corp., 844 F.3d 832, 837 (9th Cir. 2016).

The focus of our attention is the clause "in the same manner as if such amount were such tax." This clause is drafted in the subjunctive mood. Clauses of this type are commonly used to express a counterfactual hypothesis. See, e.g., Andrea A. Lunsford, The St. Martin's Handbook 633 (5th ed. 2003) (describing the subjunctive mood as expressing "a wish, suggestion, requirement, or a condition contrary to fact"). For example, assume a statute providing that certain persons (green card holders, perhaps) shall be treated "in the same manner as if they were citizens." In such a statute, Congress would necessarily presume that such persons were not in fact citizens, providing merely that they should be accorded the treatment which citizens receive.

Section 6201(a)(4)(A) is read most naturally as expressing such a counter-factual hypothesis. Respondent acknowledges that restitution is not literally "a tax." See Staff of J. Comm. on Taxation, General Explanation of Tax Legislation Enacted in the 111th Congress, 461 (J. Comm. Print 2011) (noting that "restitution is not itself a determination of tax," so that before the enactment of section 6201(a)(4) the Code "d[id] not provide a basis on which tax may be assessed"). And the courts have recognized that "[c]riminal restitution, even as a penalty for a failure to pay taxes, is not a tax." United States v. Tilford, 810 F.3d 370, 372 (5th Cir. 2016). Rather, Congress adopted in section 6201(a)(4) the counterfactual hypothesis that restitution is a tax for the limited purpose of enabling the IRS to assess that amount, thus creating an account receivable on the taxpayer's transcript against which the restitution payment can be credited.

Section 6601(a) provides that interest shall be paid "[i]f any amount of tax imposed by this title" is not timely paid. And section 6651(a)(3) imposes an "addition to tax" in case of failure to pay timely "any tax required to be shown on a return * * * which is not so shown." The amount of restitution is not a "tax imposed by" title 26. Nor is it a "tax required to be shown on a return * * * which is not so shown." Rather, it is an amount assessed "in the same manner as if such amount were such tax." Interpreted according to its plain meaning, the statutory

text shows that assessments of restitution under section 6201(a)(4) do not generate interest under section 6601(a) or additions to tax under section 6651(a)(3).[8]

The Secretary has not issued regulations interpreting section 6201(a)(4). Instead, respondent cites provisions of the Internal Revenue Manual (IRM) in support of his position that interest and additions to tax arise on amounts assessed under that provision. In respondent's view, the statute creates "another avenue for collection" because every award of criminal tax restitution now constitutes "two separate debts"--one to the FLU and the other to the IRS. See IRM pt. 25.26.1.2(6) (Mar. 24, 2014).

The IRM states that this second debt will be "assessed and collected by the Service in the same manner as if it was a tax." Id. pt. 5.1.5.15.7(1)(b) (Dec. 12, 2014). Because criminal restitution is "assessed and collected the same as any civil tax assessment, * * * interest and the failure to pay [addition to tax] * * * would apply as they would for any other civil tax assessment." Id. pt. 25.26.1.2(6)

---

[8]Under title 18 post-judgment interest accrues on most restitution obligations that are not "paid in full before the fifteenth day after the date of the judgment." 18 U.S.C. sec. 3612(f) (2012). In their final payment to the U.S. Attorney's Office, petitioners appear to have included title 18 post-judgment interest that had accrued on the $562,179 restitution award. In thereafter releasing the restitution lien, the U.S. attorney certified petitioners' compliance with the restitution order "together with all statutory additions." In view of our disposition, we need not decide whether this certification had any effect on the IRS' ability to impose interest and additions to tax on the restitution amount.

(Mar. 24, 2014). Thus, "[n]ormal interest rules will apply," id. pt. 25.26.1.2(8) (Mar. 24, 2014), and the addition to tax "for paying late applies the same as it would for any other civil tax assessment," id. pt. 20.1.2.2.8.9(1) (July 2, 2013). For the latter purpose, the amount of restitution ordered will "represent[] tax required to be shown on a return that was not shown." Id. pt. 25.26.1.2(7) (Mar. 24, 2014).

Respondent's position, in short, is that interest and additions to tax are an inevitable adjunct of the civil tax collection machinery that section 6201(a)(4) activates. According to the IRM, even the sentencing court is powerless to stop this machine: "If the court waives all interest and additions to tax during sentencing, the interest and additions to tax being waived are those that may be imposed under Title 18." IRM 5.1.5.15.1 (Note) (Dec. 16, 2014). In the Commissioner's view, the sentencing court "does not have jurisdiction to waive civil interest and additions to tax that may be imposed under Title 26." Ibid.

These IRM provisions, while long on instructions, are short on analysis. It is well established that IRM provisions do not bind the courts. See United States v. Wanland, 830 F.3d 947, 956 (9th Cir. 2016); Fargo v. Commissioner, 447 F.3d 706, 713 (9th Cir. 2006) (noting that the IRM "does not have the force of law"), aff'g T.C. Memo. 2004-13; Riland v. Commissioner, 79 T.C. 185 (1982) (holding

that a failure to abide by IRM provisions does not violate due process). The respect that courts accord an agency manual is limited to its "power to persuade" by its "thoroughness, logic, and expertness." United States v. Mead Corp., 533 U.S. 218, 234-235 (2001). On a question of statutory construction such as this, IRM provisions would have limited power to persuade, even if they evidenced "thoroughness, logic, and expertness," which these do not.

When pressed on the significance of Congress' use of the subjunctive mood in section 6201(a)(4)(A), respondent submits that "there is no meaningful difference between an amount that is assessed and collected * * * as if it were a tax and an amount that is assessed and collected * * * as a tax." But just as we presume that Congress knows the settled legal definitions of the words it uses, see Commissioner v. Keystone Consol. Industries, Inc., 508 U.S. 152, 159 (1993), we ascribe to Congress an understanding of "ordinary English grammar," Flores-Figueroa v. United States, 556 U.S. 646, 650 (2009). Other things being equal, we will opt for a statutory construction that "imputes to Congress a surer grammatical touch than does the alternative interpretation." Flora v. United States, 362 U.S. 145, 150 (1960).

We previously considered the "as if" language of section 6201(a)(4) in Muncy v. Commissioner, T.C. Memo. 2017-83, supplementing T.C. Memo.

2014-251, <u>vacated and remanded on other grounds</u>, 637 F. App'x 276 (8th Cir. 2016). The taxpayer there had been convicted of tax crimes and ordered to pay restitution. The Commissioner commenced a civil audit for the years in question, sent the taxpayer a notice of deficiency determining deficiencies and additions to tax, and later amended his answer to assert increased deficiencies and additions to tax.

One of the questions in <u>Muncy</u>, at *13, was whether the Commissioner "should reduce his deficiency determinations by amounts of restitution previously ordered by the District Court," which the taxpayer had not paid. Section 6211(a) defines a "deficiency" as the correct tax for a year minus "amounts previously assessed * * * as a deficiency." We held that no offset was required, ruling that the amounts of restitution assessed under section 6201(a)(4) had not been "assessed * * * as a deficiency."

In reaching that conclusion, we contrasted the text of section 6201(a)(4)(A) with that of section 6665(a)(1), which provides that additions to tax, additional amounts, and civil penalties "shall be assessed, collected, and paid in the same manner as taxes." Section 6201(a)(4)(A), by contrast, provides that the Secretary "shall assess and collect the amount of restitution * * * for failure to pay any tax * * * in the same manner <u>as if</u> such amount were such tax." (Emphasis added.)

We stated in <u>Muncy</u>, at *15, our belief that "the distinction between 'as if' and 'as' is significant." The fact that restitution is assessed not as a tax, but only in the same manner as if it were a tax, supported our conclusion that the restitution the taxpayer had been ordered (but failed) to pay should not reduce the deficiencies the Commissioner had determined. <u>Accord</u> <u>Rozin v. Commissioner</u>, T.C. Memo. 2017-52, at *11 (ruling that "restitution payments are not included as 'amounts previously assessed * * * as a deficiency'"); <u>see</u> <u>Muncy</u>, at *16.

Analogous reasoning seems appropriate here. Respondent contends that we should interpret section 6201(a)(4)(A) as if Congress had drafted it to authorize the Secretary to assess restitution "in the same manner as such tax." In so contending, respondent is either asserting that "as if" and "as" have the same meaning (no educated English speaker would think so) or that the words "if such amount were," which Congress inserted between "as" and "such tax," should be ignored as surplusage. But it is well established that we must interpret a statute so as to give meaning to every word and phrase. <u>See, e.g.</u>, <u>Lamie v. United States Tr.</u>, 540 U.S. 526, 534 (2004); <u>Negonsott v. Samuels</u>, 507 U.S. 99, 106 (1993). And "if" is a dangerous word to deem surplusage. As Rudyard Kipling reminded us in his 1895 poem of the same name, much rides on "if."

B.    The Legislative History

In support of a contrary conclusion respondent relies on the statute's legislative history.  He adduces no support from any reports that accompanied the enactment of section 6201(a)(4).  Rather, he cites a floor speech by a House member expressing her belief that the bill would enable the Secretary "to assess and collect, in the same manner as delinquent taxes are assessed and collected, mandatory orders of restitution for victims of crime."  156 Cong. Rec. 12032 (June 29, 2010).

The Supreme Court held long ago that "contemporaneous remarks of a sponsor of legislation are certainly not controlling in analyzing legislative history."  Weinberger v. Rossi, 456 U.S. 25, 35 n.15 (1982).  Where, as here, a "floor speech and statutory language collide, the floor speech[] must give way," because Congress expresses its "constitutional voice [in] the text of the statutes it enacts."  Szehinskyj v. Atty. Gen. of United States, 432 F.3d 253, 260 (3d Cir. 2005).  In Muncy, at *17-*18, we rejected reliance on the same floor speech, ruling that section 6201(a)(4) was "not intended to be a radical departure from the way restitution was previously collected for criminal tax cases."

Respondent contends that the enactment of section 6201(a)(4) subjected restitution payments to the IRS' entire civil tax collection apparatus, automatically bringing interest, additions to tax, and penalties in its wake.  But nothing in the

legislative history suggests that Congress intended this provision to accomplish such a sea change. For many years previously, restitution orders had operated as liens in favor of the United States, essentially equivalent to Federal tax liens. See 18 U.S.C. sec. 3613(c) and (f) (2012) (providing that a restitution lien "arises on the entry of judgment" and attaches to "all property and rights to property" of the defendant); United States v. Ridgeway, 489 F.3d 732, 737 n.9 (5th Cir. 2007). Upon the filing of a notice of that lien, a restitution order had the same priority, force, and effect as a Federal tax lien. See, e.g., United States v. Loftis, 607 F.3d 173, 179 n.7 (5th Cir. 2010) (stating that "a restitution order [is] enforceable to the same extent as a tax lien"); United States v. Kollintzas, 501 F.3d 796, 802 (7th Cir. 2007) (holding that restitution orders "are effective against every interest in property accorded a taxpayer by state law").

Thus, when Congress enacted section 6201(a)(4) in 2010, the IRS' usual toolkit for collecting a Federal tax liability was already at the Government's disposal for enforcing a restitution order.[9] Following the conclusion of criminal proceedings, the IRS normally commences a civil audit, leading to a notice of

---

[9]In particular, the tax lien foreclosure procedures of section 7403 and the levy and distraint procedures of sections 6331-6344 were available to the Government (and still remain available) for enforcing a restitution lien. See generally United States v. Novak, 476 F.3d 1041, 1045 n.6 (9th Cir. 2007); see also United States v. Lampien, 89 F.3d 1316, 1322 n.6 (7th Cir. 1996).

deficiency and eventual establishment of the taxpayer's actual tax liability for the

relevant years. Congress presumably understood that this civil liability, once

finally determined, would attract interest under section 6601(a), as well as additions to tax where applicable. That being so, Congress is unlikely to have intended section 6201(a)(4) as a vehicle for giving the Secretary new powers to assess and collect additions to tax and interest.[10]

The explanation offered by the Joint Committee on Taxation in its Blue

Book suggests that Congress had a more modest aim. See Staff of J. Comm. on

---

[10]We find further support for this conclusion in the rules applicable to the Government's use of the Federal Debt Collection Procedures Act of 1990 (FDCPA), 28 U.S.C. secs. 3001-3308 (2012), to enforce restitution orders. See United States v. Mays, 430 F.3d 963, 967 (9th Cir. 2005); see also United States v. Gianelli, 543 F.3d 1178, 1182-1183 (9th Cir. 2008). The FDCPA allows the Government to move the sentencing court to obtain writs of execution, 28 U.S.C. sec. 3203, and garnishment, 28 U.S.C. sec. 3205, without the need "to obtain a civil judgment prior to enforcing a criminal restitution order," Mays, 430 F.3d at 966. But FDCPA's civil remedies grant the Government "statutory authority to enforce only the terms of a restitution order, not to take an enforcement action that would exceed a restitution order's payment terms." United States v. Martinez, 812 F.3d 1200, 1207 (10th Cir. 2015). Our research has discovered no case where the Government argued (let alone argued successfully) that FDCPA authorized it to collect more in restitution than what the sentencing court had originally ordered. FETIA's legislative history is devoid of any suggestion that Congress, when enacting section 6201(a)(4), intended to change this long-settled practice of according primacy to the terms of the restitution order in executing a civil collection remedy.

Taxation, supra, at 459-461.[11]  In explaining the reason for the enactment of section 6201(a)(4), the Committee focused exclusively on the need to allow the IRS to create an "account receivable against which the restitution payments can be credited." Id. at 461.  In the absence of an agreement with the Department of Justice, the IRS generally defers "work on the civil aspects of determining the tax liability * * * until after the conclusion of criminal proceedings." Ibid.  Thus, under pre-enactment law, when a sentencing court ordered a defendant to pay restitution to the IRS, the agency "often ha[d] not yet assessed the relevant civil tax liability" and thus lacked an account receivable against which to credit restitution payments. Ibid.  According to the Joint Committee, the intended effect of section 6201(a)(4) was limited to improving the IRS' bookkeeping for such awards.

Respondent urges that his construction of section 6201(a)(4) is supported by a negative inference he draws from section 6305(a).  That provision authorizes the IRS, upon certification from the Secretary of Health and Human Services of an amount of delinquent spousal or child support, to "assess and collect the amount certified * * * in the same manner * * * and (except as provided in this section)

---

[11]Although not legislative history, a "Blue Book, like a law review article, may be relevant to the extent it is persuasive." United States v. Woods, 571 U.S. __, __, 134 S. Ct. 557, 568 (2013).

subject to the same limitations as if such amount were a tax * * * the collection of which would be jeopardized by delay."

As respondent notes, sections 6305(a) and 6201(a)(4) are worded similarly in that each authorizes the Secretary to assess an amount "as if such amount were" a tax. But in section 6305(a) Congress explicitly provided, as one of the "exceptions" enumerated therein, that "no interest or penalties shall be assessed or collected." Sec. 6305(a)(1). According to respondent, this shows that Congress knows how to bar the imposition of interest and additions to tax upon assessments of deemed tax when it wishes to do so. The absence of a similar exception from section 6201(a)(4)(A) supposedly "indicates that Congress did intend for statutory interest * * * [and additions to tax] to accrue on restitution assessments."

Under a familiar canon of statutory construction, "a negative inference may be drawn from the exclusion of language from one statutory provision that is included in other provisions of the same statute." Hamdan v. Rumsfeld, 548 U.S. 557, 578 (2006). But such negative implications "are strongest when the provisions were considered simultaneously when the language raising the implication was inserted." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175 (2009). Section 6305 was added to the Code in 1975. See Social Services Amendments of 1974, Pub. L. No. 93-647, sec. 101(b)(1), 88 Stat. at 2358. There is no reason to believe

that the Congress which enacted FETIA 35 years later focused on the clause in section 6305(a) excluding interest and additions to tax, let alone that it considered (but decided against) providing such an exclusion in section 6201(a)(4).[12]

### C. Tax Loss vs. Civil Tax Liability

The restitution ordered in a criminal tax case is designed to compensate the IRS for the loss caused by the defendant's wrongdoing. But that award does not purport to reflect the defendant's actual civil tax liability. Generally, the IRS will later commence an examination to determine what the taxpayer's civil tax liability is. That liability may be higher or (as petitioners contend here) lower than the tax loss that formed the basis for the restitution award. This shows the fundamental error of respondent's submission that the tax-loss-based restitution amount should be equated with a "tax imposed by" title 26 or a "tax required to be shown on a return * * * which is not so shown." Secs. 6601(a), 6651(a)(3).

---

[12]Title 18 has long provided, in language resembling that subsequently adopted by Congress in section 6201(a)(4), that a restitution order shall be enforced "as if the liability * * * were a liability for a tax assessed under the Internal Revenue Code." 18 U.S.C. sec. 3613(c), (f) (2012). In the years preceding the enactment of section 6201(a)(4), we are aware of no instance in which the Government sought to use those title 18 provisions to argue for adding, to the amount of restitution the sentencing court had ordered, interest under section 6601 or additions to tax under section 6651. This is consistent with the modest goal we have ascribed to Congress in FETIA, namely, to facilitate IRS bookkeeping by transforming the restitution obligation from a deemed assessment to an actual assessment.

The restitution award is based on the same tax-loss calculation that governs the defendant's sentencing under the Sentencing Guidelines. See, e.g., Kawashima v. Holder, 615 F.3d 1043, 1051 (9th Cir. 2010), aff'd, 565 U.S. 478 (2012); United States v. Conway, 323 F. App'x 517, 519 (9th Cir. 2009). But because the Guidelines are only advisory after United States v. Booker, 543 U.S. 220 (2005), it is within a sentencing court's discretion not "to dwell on the exact amount of the tax loss" as defined in the Guidelines. United States v. Suzuki, 180 F. App'x 751, 752 (9th Cir. 2006); see also United States v. Kohler, 359 F. App'x 877, 879 (9th Cir. 2009) (holding that a District Court may "find additional facts" when calculating the tax loss); United States v. Poseley, 267 F. App'x 613, 616 (9th Cir. 2008).

But even if the sentencing court were to adhere strictly to the Guidelines, the resulting tax-loss number is unlikely to bear more than a passing resemblance to the defendant's civil liability under the Code. The Guidelines explain that "the definition of tax loss corresponds to what is commonly called the 'criminal figures.'" U.S.S.G. sec. 2T1.1, app. n.1. Those "criminal figures" stand in contrast to the terms the Code uses for civil tax liability, such as "deficiency" or "underpayment of tax."

The "[G]uidelines employ simplified calculations of tax loss in order to avoid complex disputes over late-blooming adjustments and deductions the

taxpayer asserts he could have taken." United States v. O'Brien, 35 F.3d 573, 1994 WL 470265, at *3 (9th Cir. 1994) (unpublished). They do so because at sentencing, "the amount of the tax loss may be uncertain." U.S.S.G. sec. 2T1.1, app. n.1. In such circumstances, "the court will simply make a reasonable estimate based on the available facts." Ibid.

Under the Guidelines, the yardstick for measuring the tax loss is typically not understated taxable income, but underreported gross income "unless a more accurate determination of the tax loss can be made." Id. sec. 2T1.1(c)(1)(A); see also id. app. n.1, Exs. 1 & 2. According to the Court of Appeals for the Ninth Circuit, the exception for "a more accurate determination" does not apply to "tax deductions that the taxpayer chose not to claim." United States v. Yip, 592 F.3d 1035, 1041 (9th Cir. 2010). The Ninth Circuit has therefore held that the Guidelines do "not entitle a defendant to reduce the tax loss charged to him by the amount of potentially legitimate, but unclaimed, deductions even if those deductions are related to the offense." Ibid. By contrast, unclaimed deductions for legitimate expenses would be fully available to the taxpayer, upon his furnishing adequate substantiation, in determining his civil tax liability in an IRS audit.[13]

_____

[13]Even when a defendant admits to an exact tax-loss amount at sentencing, he remains free to establish a smaller deficiency. That is true whether the prior

(continued...)

The process by which the District Court determined petitioners' sentences reflected the application of these general principles. That court stated that it would consider modifying the restitution order if petitioners' 2003-2006 Federal tax liabilities were determined to be less than the tax loss it had estimated. It referred to spreadsheets showing possible deductions for 2003-2006 as "being used to resolve the ongoing civil dispute, not the criminal matter which has already been determined." And it noted that, "more than a year after sentencing, the civil dispute has not settled, indicating the depth of factual inquiry necessary to resolve the issues of deductions and income."

All of this goes to show why restitution assessed under section 6201(a)(4) cannot be equated to a "tax imposed by this title," upon which interest arises under section 6601(a), or a "tax required to be shown on a return * * * which is not so

---

[13](...continued)

criminal conviction was for violating section 7206(1) by filing a false return, see Ephrem v. Commissioner, T.C. Memo. 2014-12, or for another tax crime, such as tax evasion in violation of section 7201, see Livingston v. Commissioner, T.C. Memo. 2000-121. Indeed, a defendant's admitting to a tax-loss number at sentencing, while constituting "strong evidence" of the amount of unreported income, does not "establish that there is no genuine issue of fact as to the precise amount" of unreported income. Uscinski v. Commissioner, T.C. Memo. 2006-200, 92 T.C.M. (CCH) 285, 287; see also Ephrem, T.C. Memo. 2014-12, 107 T.C.M. (CCH) 1066, 1067 (denying the Commissioner summary judgment because the taxpayer's plea agreement reciting a tax-loss figure did not "establish[] as a fact in this civil proceeding the precise amounts" of understated income).

shown," upon which an addition to tax may arise under section 6651(a)(3). The restitution obligation is based on a simplified estimate of the Government's tax loss and typically ignores inputs (such as previously unclaimed deductions) that may be critical in determining the taxpayer's actual civil liability. See Rozin v. Commissioner, T.C. Memo. 2017-52, at *5 ("Although restitution is based upon an estimate of civil tax liability, it is not determinative of civil tax liability.").[14] The restitution obligation is not a civil tax liability, and Congress did not change that fact when it authorized the IRS in 2010 to assess and collect restitution "in the same manner as if such amount were such tax." Sec. 6201(a)(4)(A).[15]

_____

[14]Conversely, nothing bars the IRS "from asserting a deficiency greater than * * * [a defendant's] restitution obligation." Durland v. Commissioner, T.C. Memo. 2016-133, 112 T.C.M. (CCH) 37, 52; see also Morse v. Commissioner, 419 F.3d 829, 833-835 (8th Cir. 2005) (holding that sentencing court's restitution order does not preclude the Commissioner from litigating defendant's deficiency), aff'g T.C. Memo. 2003-332.

[15]Adoption of respondent's position could lead to absurd results. Several courts have held that, "[i]f the object of the offense is to avoid the tax, additions to tax, penalties, and interest, then additions to tax and interest should be included in the tax loss." United States v. Black, 815 F.3d 1048, 1055 (7th Cir. 2016) (citing United States v. Thomas, 635 F.3d 13 (1st Cir. 2011)); see Staff of J. Comm. on Taxation, General Explanation of Tax Legislation Enacted in the 111th Congress, at 460 (J. Comm. Print 2001) (noting possibility that interest and additions to tax might be included in a restitution award); Garavaglia v. Commissioner, T.C. Memo. 2017-131 (addressing taxpayer's entitlement to overpayment interest when prejudgment interest included in restitution award exceeds underpayment interest). If the tax loss were calculated in this way, imposition of interest and additions to

(continued...)

In holding that interest and additions to tax do not arise on amounts assessed under section 6201(a)(4), we are not disabling the IRS from collecting interest or additions to tax for petitioners' 2003-2006 tax years.  At the time of sentencing, petitioners executed a closing agreement "waiv[ing] all defenses against and restrictions on assessment and collection" and waiving "any defense based on the expiration of the period of limitations."  In June 2012 petitioners filed amended returns reporting that their aggregate tax liability for 2003-2006 was $106,578, as opposed to the $562,179 tax loss determined by the District Court.

If the IRS wishes to collect interest and additions to tax, it is free to commence a civil examination of those returns at any time.  Upon final determination of petitioners' 2003-2006 civil tax liabilities, interest will arise automatically under section 6601(a), and additions to tax (if appropriate) may be imposed under section 6651(a)(3).  But the interest and additions to tax would then be computed,

[15](...continued)
tax on the amount of restitution assessed under section 6201(a)(4) would obviously be duplicative.  Evidently recognizing this problem, the IRS is now instructing its agents to exclude from a section 6201(a)(4) assessment any pre-judgment interest awarded as restitution, because "to include it would be to double assess the interest."  IRM pt. 8.7.1.11.2(f) (Feb. 24, 2017).  While this instruction seems reasonable, it undermines respondent's submission that the amount of restitution ordered by the sentencing court is assessed under section 6201(a)(4) "as a tax" that automatically generates interest under section 6601(a).

not by reference to the $562,179 tax loss, but by reference to whatever petitioners'

actual tax liabilities are ultimately determined to be.

To reflect the foregoing,

<u>Appropriate orders and decisions</u>

<u>will be entered</u>.